## McBarron *et al.* versus Gilbert *et al.*

*Location of Land Warrants, when valid without actual Survey.—*
*Validity of Chamber Surveys.*

1. Though a mere unexecuted intention to appropriate vacant land has no effect as a survey, yet an intention to appropriate manifested by a formal return into the land office, is sufficient to give notice, and is one of the recognised modes of locating land warrants.

2. Chamber surveys, after the lapse of twenty-one years from their return to the land office, are presumed to have been returned as actual surveys; and the intended appropriation of the surveyor thus becomes an actual appropriation, as if the survey had been made upon the land.

3. Hence, where in a case of disputed title to land, the court held the warrants under which the plaintiffs claimed, to be descriptive to a common intent, and the surveys to be chamber surveys, but referred the question of actual location to the jury with instruction that if they believed the warrants were located or *intended* to be located, on the land claimed by the plaintiffs, their verdict should be for the plaintiffs: and also, that if they believed that the surveyor *intended* to locate the surveys on the land claimed, the law located them there; it was *Held*, that the instruction (being in effect that the surveyor either located the warrants on the land by actual survey, or by protraction on paper, which when returned into the land office would indicate the land *intended* to be appropriated), was proper.

4. Where, in 1794, ten years after the issuing of the warrants under which plaintiffs claimed, other warrants issued covering the land in dispute, which were regularly surveyed on the land and patented to R. M., but who never claimed under that title (nor did any one under him) : *held*, after the lapse of 65 years, not to be such a valid subsisting and outstanding title as could be set up to defeat the plaintiffs' recovery on their earlier warrants; and that if it was, the defendants, who were strangers to it, could not set it up.

ERROR to the Common Pleas of *Schuylkill county*.

This was an action of ejectment brought in the court below to December Term 1853, by John Gilbert, Silas H. Wentz, and John Rorer against John McBarron, John Lauberger, Barnhart Eisenhuth, and John Eisenhuth, for eight hundred acres of coal land in Mahanoy Valley.

The plaintiffs claimed title under two warrants and surveys, one dated September 4th 1784, to Conrad Mertz, for four hundred acres, upon which a survey of four hundred acres and allowance was made by Henry Vanderslice, deputy surveyor, on 5th May 1787. This survey called for a survey in the name of Abraham Betz and Edward Middleton, and the Betz survey also called for a survey in the name of Middleton, which is also marked on the draft with the Mahanoy running through the latter. A patent was granted for this survey to Jacob Faust, Jr., on January 4th 1788. The other warrant was in the name of George Flower, dated 21st July 1784, for three hundred acres, upon which a survey of four hundred acres was made by the same deputy 5th May 1787; on 4th January 1788, a patent for this survey was also granted to Jacob Faust, Jr.

[McBarron *et al. v.* Gilbert *et al.*]

The plaintiffs showed further, by the conveyances given in evidence, that the title under these warrants, surveys, and patents vested in them.

They also showed a sale of the land by the treasurer in 1836, for taxes, and a conveyance of the title under this sale to them.

They also gave in evidence a memorandum book of Henry Vanderslice, deputy surveyor of Berks county, which was alleged to be his field-notes. And a number of certified copies of surveys and contested drafts from the land office, purporting to have been made and returned by Vanderslice in 1794, on the south, east, and west of the Flower, Mertz, and Betz surveys, containing endorsements of the names as adjoiners.

This evidence was offered to prove the location of plaintiffs' warrants as claimed by them, and was admitted under exception.

The warrants under which the plaintiffs claimed were descriptive, but not of the land described in the writ of ejectment.

All the conveyances from 1788, the date of the patents, to 1830, described the land as being "on the Mahanoy," and were recorded in *Northumberland* county. The Mahanoy crosses the county line some distance below the junction of the Big and Little Mahanoy, where the Mertz warrant described the land.

The plaintiffs also gave in evidence the assessments of taxes on these lands from 1820 to the time of suit, in the names of Conrad Mertz, George Hower, Sebastian, Faust, and others.

It was in evidence that the land was seated and occupied before and during the time the assessments were made, under which the treasurer's sale was made.

The defendants claimed title in three ways : First, under warrants and surveys of 1815. Secondly, by the warrants and surveys of 1794; and, lastly, by a treasurer's sale for the payment of taxes.

To sustain this claim of title, the defendants gave in evidence four warrants, dated 24th May 1815, to Philip Hoy, George Body, Abraham Hoy, and George Body, Jr., and that on the 7th and 8th of June 1815, surveys were made on the warrants covering the land in dispute. That in July 1815, patents were granted to the warrantees respectively, and the title under these patents was shown to be in the defendants, or some of them.

The defendants further showed an application, dated the 10th January 1794, for thirty-four tracts of land, on the head waters of Mahanoy creek, in Northumberland county, in the name of Nathan Beach and others. Warrants were issued to them, and surveys made thereon by William Gray, deputy surveyor of Northumberland county, in 1794, and in the same year patents were granted for those surveys to Robert Morris, some of which

surveys covered the land in dispute. It was not shown that the title under these warrants, surveys, and patents had ever been vested in the defendants; nor did it appear that Robert Morris, or those claiming under him, had either taken possession of the land, paid the taxes on them, or claimed title to them.

They also gave evidence of the assessment of taxes on these lands from 1816, in the names of the warrantees and the subsequent owners; and also a sale for taxes to them in 1842, for which year, however, it appeared the taxes had been paid by the plaintiffs, under an assessment in their names.

The plaintiffs requested the court to instruct the jury :—

1. The plaintiffs claiming under surveys of 1787, and patents of 1788, the presumption is, that all things required to be done before the obtaining of the patents were done, and the plaintiffs in this case are not required, after a period of seventy-two years, to show that lines were in fact run on the ground by the deputy surveyor who made the surveys in 1787, to entitle them to recover in this action; and if the patents apply to the land claimed in this action, the plaintiffs have a right to recover as against all warrants and surveys of a subsequent date to the said patents.

2. The presumption of law arising from the return of a survey and patent, is not to be affected by showing that surveys were made, interfering in part with the surveys of the plaintiffs in 1794. If the defendants do not claim title under such interfering surveys, and where there is no evidence to show that the owners of these interfering surveys ever claimed title against the plaintiffs' older surveys and patents.

3. If the jury are satisfied from the evidence that the two surveys of George Flower and Conrad Mertz, as returned by Vanderslice in 1787, apply to the land claimed by the plaintiffs, and that the calls at the east end of the Conrad Mertz survey refer to the lines now found on the ground, as marked in 1776, and which lines are now called by the surveyor "The Middleton lines," and to the official return of the Abraham Betz survey, then, so far as location of the plaintiffs' survey is a question, the plaintiffs are entitled to recover. Notwithstanding all the witnesses say that they cannot now find any lines or marks upon the ground, of the date of either the Mertz, Flower, or Betz surveys; and notwithstanding the warrants and surveys of 1794, and patents thereon to Robert Morris in 1794, cover three-fourths the same land that is included in plaintiffs' patent of 1788, there being no evidence in the cause that Robert Morris, or any person claiming under him, has ever made any claim to the land in dispute adverse to the plaintiffs' title, and no evidence that the land in dispute has ever been assessed under the Robert Morris title, or that any one has ever attempted to take possession of it, or made any claim to it, under that title.

4. If the land in question was the land taxed and sold in 1836 by the treasurer of Schuylkill county as unseated, to Henry Voute and Edward Huntzinger, it conferred title in the purchasers and those claiming under them, as against the defendants in this action who claim title, not under, but in opposition to the owners of the Mertz and Flower surveys, taxed and sold.

6. If the jury believe from the evidence in the cause that at the point on Mahanoy creek, where the plaintiffs claim as the eastern line of the Conrad Mertz survey, there was a survey on the ground, called Edward Middleton, of an older date than the Mertz survey, and that the deputy surveyor bounded the Mertz and Betz surveys upon it as stated in the returns of these surveys, and that from that point the Mahanoy creek ran through the Mertz and Flower surveys, as represented on the said returns, and that the same deputy surveyor, in February, May, and June 1794, officially located the surveys of Sarah Moore, Henry Miller, Robert Whitehead, and James Tremble, on the west and north of the same Mertz and Flower surveys; and the surveys of Peter Yoke, Peter Benson, and Sarah Willard of the south of these surveys, all calling for the Mertz and Flower surveys, and leaving a space for them according to their returns as made in 1787; and that the said Peter Yoke, Peter Benson, and Sarah Millard were marked on the ground in May and June 1794, forming at that time a south boundary for the Mertz and Flower, according to their returns or nearly so, then there was a sufficient survey of the said Mertz and Flower surveys on the ground, before any intervening right, and the plaintiffs are entitled to recover.

7. The field-notes of Henry Vanderslice of the dates of the Mertz, Flower, and Betz surveys, as returned by him, and showing the manner of those surveys in connection with the Mahanoy creek and the Middleton survey, are evidence to show an actual location on the ground of those surveys—and at this distance of time, from the dates of those surveys and patents thereon, connected with the other evidence in the cause, must be conclusive of the fact of actual survey, so as to give title under the patents.

The defendants also presented the following points :—

The first three points were not pressed.

4. That the book given in evidence is not a book of field-notes, and does not show that the lines of the Flower and Mertz surveys were ever run upon the ground, or that the surveys thereof in evidence are not chamber surveys.

5. That there is no evidence of any survey having been made for Edward Middleton, under any application, warrant, "or other legal authority," having for a western corner thereof the stones by the two hemlocks spoken of by the surveyor witnesses; that even if the jury believe that the line or lines run, and marked upon the ground east of said stones by the hemlocks, were a survey or part of surveys made for Edward Middleton, yet that

such survey or part of survey, under the evidence in the case, was but a trespass on the unappropriated lands of the Commonwealth, which could afford no notice of boundary to any subsequent purchaser of land from the Commonwealth, and would be a line, or lines or marks of which the law affords him no legal means of ascertaining the character or object, and consequently a call for such marked line or lines in a survey by any name, would not be a call for a boundary, or adjoiner, which could fix a location as against a subsequent purchaser from the Commonwealth.

6. That as the Mertz and Flower warrants do not call for lands lying where the plaintiffs claim the location of the surveys to be under such warrants, the plaintiffs must claim such location by virtue of the surveys having been shifted from the calls of the warrants, and that to establish such shifted locations, it must appear that the surveys were so located by marking their lines upon the ground, or by known natural boundaries, or by marked lines previously made "under legal authority," and that if the jury believe the lines of the Mertz and Flower surveys were not originally marked upon the ground, it not being claimed that these surveys have any known natural boundaries, or calls for lines made by "legal authority," the plaintiffs cannot recover.

7. That as the Conrad Mertz warrant is a descriptive one, and calls for land on a small branch of the Mahanoy, about four miles above Yarnell's, &c., that the survey must be presumed to be located according to the call of the warrant, unless there is legal evidence of its having been elsewhere located. That the survey does not call for any natural boundaries, that it does not call for any adjoiner that appears to have been marked upon the ground by virtue of any "legal authority," that there is no evidence of any marks upon the ground at the date of the survey at the place claimed by the plaintiffs for the location of the Mertz; that the Abraham Betz survey for which the Mertz calls does not appear to have been marked upon the ground at the place claimed by plaintiffs for its location, nor is it fixed by any natural boundaries nor by any marked lines made by "legal authority," and that consequently there is no sufficient legal evidence to locate the Conrad Mertz different from the call of the warrant.

8. That the location of the Flower and Mertz surveys must be ascertained by evidence of marks on the ground, at the date of such surveys, or by natural boundaries then existing, or by calls for marked lines then existing and made under "legal authority," and that all evidence or inference of such locations derived from the calls of subsequent surveys, is to be disregarded, and as the surveyors who give opinions in favour of the location of Mertz and Flower surveys as claimed by plaintiffs, base such opinions exclusively upon inference drawn from the calls of subsequent

surveys in connection with a marked line not made by "legal authority," there is no sufficient evidence to sustain the location claimed by the plaintiffs.

9. Although some of the surveyors may believe, as some of them have testified in this case, that the private intention of the deputy surveyor Vanderslice, inferred from his subsequent official acts, was to locate the Mertz and Flower surveys as claimed by the plaintiffs; yet if such surveys were not marked on the ground, or fixed there by known natural boundaries, or lines made by "legal authority," such intention does not constitute location different from the calls of the warrants, and is of no legal effect against the Hoys and Bodys, and those claiming under them.

10. That the Mertz survey calls for no natural boundaries, nor for any lines made by "legal authority," except that of the Betz, and if the jury believe, as testified to by all the surveyors, that the lines of neither the Mertz or Betz were marked upon the ground, at the date of their surveys respectively, and as the Betz does not call for any natural boundaries, or any other lines made by "legal authority," except that of the Mertz, the Betz survey furnishes no guide or help for the location of the Mertz, and that therefore the Hoys and Bodys, when they purchased of the Commonwealth, had no means of notice of any prior appropriation of the lands, by the Flower and Mertz surveys, and, consequently, are not affected by such appropriation, even if, in point of fact, the deputy surveyor Vanderslice intended to locate them as claimed by the plaintiffs.

11. That the Hoys and Bodys purchased their lands and paid the Commonwealth, and are entitled to protection against all prior claims of which they have no notice either actual or constructive, and that a survey such as that of the Conrad Mertz and George Flower, which was never marked on the ground, and has no other means of fixing its location except upon reference to some lines of an unauthorized survey, is not notice actual or constructive, and therefore has not any legal priority.

12. That the plaintiffs must recover on the strength of their own title; that the title to the Blakey, Beach, two Bradys, and two Pascalls, is shown to be vested in Robert Morris and his heirs; their surveys are also shown to have been marked on the ground as early as 1794, at their date respectively; that this title has priority for the land embraced within such surveys over the title to the land claimed by the plaintiffs under the Flower and Mertz surveys; if the jury believe the testimony of all the surveyors, that the Flower and Mertz surveys were not actually marked upon the ground by the deputy surveyor.

13. That the warrant to Conrad Mertz of 1784 was a descriptive one, and the survey of the Conrad Mertz in 1787 called for no marks natural or artificial, which the law recognises, that

6 WR.—18

shifted it from the call of the warrant. In 1788 the land was patented, from which time the entire title of the Commonwealth was divested, so that the surveyor-general or his deputies could not change the location as previously fixed by the warrant and survey, without an order of the board of property, and that therefore no subsequent surveys by the deputy surveyor, whatever might be their calls, could affect the location as previously determined by the warrant and survey, especially as against a subsequent purchaser from the Commonwealth.

The court below (HEGINS, P. J.) answered plaintiffs' points as follows:—

"1. The law presumes that a public officer performs his duty, and presumes that all things required to be done before the obtaining of the patents, under which the plaintiffs claim, were done; and as to warrants obtained and surveys made after the lapse of twenty-one years from the return and acceptance of the surveys of the Mertz and Flower, there is a conclusive presumption of law, which cannot be disproved, that the surveys were actually run and marked upon the ground by the deputy surveyor, at the date of the surveys; and if the patents under which the plaintiffs claim apply to the land claimed in this action, the plaintiffs are entitled to recover as against the warrants and surveys given in evidence by the defendants.

"2. The presumption of actual survey after the lapse of twenty-one years from the return and acceptance of survey, is not rebutted by the fact that surveys were made in 1794, interfering in part with the plaintiffs' surveys. The effect of the warrants and surveys of 1794 is fully stated in the answer to the plaintiffs' third point.

"3. Whether the surveys of the Conrad Mertz and George Flower, as returned by Vanderslice in 1787, apply to and were located upon the land claimed by the plaintiffs, is a question of fact for the jury, under all the evidence in the case; and the fact that neither lines or marks upon the ground can now be found, of the date of either the 'Flower,' 'Mertz,' or 'Betz' surveys, is immaterial, if the jury are satisfied from all the evidence in the case, that the Mertz and Flower surveys apply to and were located on the land in dispute. Although the warrants and surveys of 1794, and patents thereon to Robert Morris in the same year, cover three-fourths of the land included in the Metz and Flower surveys, and the plaintiffs' patent of 1788, there being no evidence in the cause that Robert Morris, or any person claiming under him, has ever made any claim to the land in dispute, adverse to the plaintiffs' title, or taken possession of the land, or exercised acts of ownership over it, or returned it for taxation, or paid the taxes upon it, the title under the warrants and surveys and patents of 1794, to Robert Morris, is not such a

valid, subsisting, and outstanding title to the land in dispute, as will avail the defendants to defeat the title of the plaintiffs; and after the lapse of sixty-five years from the date of such title, under the evidence in this cause, and as between the parties to it, the law will presume that this title has been abandoned by Robert Morris, or those claiming under him.

" 4. It is for the plaintiffs to satisfy the jury for what taxes the land was sold in 1836 to Henry Voute and Huntzinger; and if the jury believe, from the evidence in the case, that the land was seated at the time the taxes were assessed for which it was sold, or were paid by any one claiming the land, the sale in question gave no title to the purchaser or those claiming under him."

The court answered the sixth and seventh points in the negative.

The defendants' points were answered as follows:—

The fourth point was affirmed.

" 5. Whether the surveys of Mertz and Flower were located by the deputy surveyor on the land claimed by the plaintiffs, is a question to be decided by the jury from all the evidence in the case; and if they were so located, the law presumes that they were actually run and marked upon the ground by the deputy surveyor, so far as regards the Hoy and Body warrants and surveys of 1815, and the owners of them had constructive notice of the location of the Mertz and Flower surveys."

6. This point was negatived.

" 7. The court instruct the jury that the Conrad Mertz warrant is descriptive to a common intent, and could be located upon the land called for in the warrant; and the law presumes that it was so located, unless the jury believe, from the evidence in the case, that it was located on the land claimed by the plaintiffs. The court are not aware that they have admitted any illegal evidence of the location of the survey, or directed the jury to any such evidence in their general charge, and, assuming all the facts stated in this point to have been proved, the court refuse to instruct the jury that there is no sufficient legal evidence to locate the Conrad Mertz survey different from the calls of the warrant."

" 8. The court refused to instruct the jury as requested in this point.

" 9. If the jury believe, from the warrants and surveys of the Mertz and Flower, and the patents thereon, in connection with the other evidence submitted to them, bearing on the subject, that Vanderslice intended to locate these surveys on the land claimed by the plaintiffs, the law locates them there, and twenty-one years having elapsed since the return of these surveys and patents thereon, as against the Hoys and Bodys, and those claiming under them, there is a presumption, *de jure,* that Vanderslice actually ran and marked the lines on the ground.

" 10. The location of the Mertz and Flower surveys being ascertained by the jury, as already instructed, there is an absolute presumption of actual survey, after twenty-one years from the date of their return and acceptance in the land office; and the Hoys and Bodys had notice of their prior appropriation of those lands by the Mertz and Flower surveys, as if the lines had been actually run and marked upon the ground at the date of the surveys.

"11. The court have already instructed the jury adversely to this proposition, and therefore answer it in the negative.

" 12. Whether the Mertz and Flower surveys were actually marked on the ground or not, we have already instructed the jury in our answer to the plaintiffs' third point, that the defendants cannot avail themselves of the title under the warrants and surveys of 1794, mentioned in this point, although actually run and marked on the ground at the dates of the surveys, as a subsisting, outstanding, and superior title, to defeat the plaintiffs' recovery.

" 13. If the survey of Mertz, under the warrant of 1784, being descriptive to a common intent, was located on the land called for in the warrant, and so patented in 1788, the entire title of the Commonwealth was divested, and the surveyor-general, or his deputies, could not change the location after the return of survey, and acceptance thereof, without an order of the board of property; but whether it was located according to the calls of the warrant, or shifted and located by Vanderslice on the land claimed by the plaintiffs, is a question of fact for the jury, as we have already submitted it to them."

In the general charge the court below, after stating the main facts of the case, instructed the jury as follows:—

[" The only remaining question of fact for you is, were the surveys of Conrad Mertz and George Flower located, or intended to be located, on the land claimed by the plaintiffs? If you believe, from all the evidence in the case, that they were, then you ought to find for the plaintiffs, if not, for the defendants, without reference to our opinion upon the various legal questions presented by the counsel, and which it is unnecessary to state here, as we have done so in our answers to the numerous propositions presented by them."

After stating the character of the Mertz and Flower surveys, and instructing the jury "that they were plotted by the deputy surveyor in his office, and returned to the surveyor-general, without being marked on the ground, and are what are called 'chamber surveys,'" the court proceeded to say: " How, then, are you to determine their location? Finding no evidence of marks on the trees of the date of the surveys, you will refer to the monuments called for in the return of the surveys. And first of the stream of water shown on the

[McBarron *et al. v.* Gilbert *et al.*]

draft as running through both surveys, and their location of the Mahanoy creek on them, as claimed by plaintiffs. It is true, in chamber surveys, the course and location of streams on the plot returned to the surveyor-general are not to be relied upon; yet, where they do correspond with the location, as claimed, it is a circumstance worthy of the consideration of the jury.

"Let us direct your attention to the survey of Conrad Mertz, for if you fix the location of it you will have no difficulty in locating George Flower, which calls for the former as a boundary on the east. The return of the survey of Mertz calls for Edward Middleton as adjoining part of its eastern line. Now, if it were shown that an official survey, in pursuance of a warrant, had been made there of the date of the marks found on what are called the 'Middleton hemlocks,' it would free the case from difficulty. But there is no warrant nor return of survey, nor are the few lines found on the ground sufficient to constitute a survey, either official or unofficial. It is in proof that other lines, of about the same date, are found along the creek, in that neighbourhood and at other points. Do the hemlocks and the lines leading from them designate the call, 'Edward Middleton,' in the survey of Mertz? If they do, then it is powerful evidence of the location, but if they do not, then they are immaterial.

"The next and only boundary called for by Mertz, is the survey in the name of Abraham Betz. If there were any monuments of this survey, then you could locate the Mertz with certainty, but there are none. The only evidence of the location of Betz is to be found in its call for Edward Middleton, and in the calls of John Kunkle and other subsequent surveys for it, as a boundary.

"You will next take into consideration the calls of surveys, subsequent in date to the Mertz survey. They afford some evidence of the true location, which is strengthened by the fact that they were made by the same deputy surveyor, and but a few years later.

"And lastly, you will take into consideration the opinion of the surveyors examined by both parties as to the proper location of plaintiffs' surveys. They are all gentlemen of knowledge and experience in their profession, and you will properly weigh and estimate their opinions."]

There was a verdict and judgment for plaintiffs. Whereupon the defendants sued out this writ, and assigned here for error that portion of the charge printed above in brackets, and the answers given to the 5th, 6th, 7th, 8th, 9th, 10th, 11th, and 13th points of defendants.

The case was argued in this court by *J. Hoffman, F. W. Hughes,* and *C. Tower,* for plaintiffs in error, and by *Garrick Mallery, C. Loeser,* and *John Bannan,* for defendants in error.

[McBarron *et al. v.* Gilbert *et al.*]

The opinion of the court was delivered, March 22d 1862, by

WOODWARD, J.—There are but two questions upon this record which can properly engage the attention of a court of errors. The first is, whether the court erred in their manner of submitting to the jury the location of the surveys which had been made of the warrants, in the names of Conrad Mertz and George Flower.

The plaintiffs in error, who were defendants below, insisted that these warrants were located at the junction of what is now called the Little Mahanoy, with the big or main branch of the stream of· that name—a location more than eight miles distant from the place where the plaintiffs placed the warrants. On the one side it was claimed that the warrants were descriptive and must be located according to their calls : on the other that if descriptive, they were shifted warrants, and did not lie where they were originally intended to be located.

The court held that the warrants were descriptive to a common intent, but referred the question of actual location to the jury, with instruction, that if they believed the warrants were located " *or intended to be located*" on the land claimed by the plaintiffs below, the verdict should be for the plaintiffs—otherwise for the defendants. This use of the word "intended" occurs in other parts of the charge, particularly in answer to the defendants' ninth point, where the learned judge said, that if the jury believed from all the evidence that Vanderslice (the surveyor) "*intended*" to locate these surveys on the land claimed by the plaintiffs, the law locates them there."

Now, the court is not complained of for submitting the question to the jury—that was in its nature a question of fact appropriate to the jury—but for leading them to suppose that an intention on the part of the deputy surveyor to locate the warrants in a particular place was equivalent to a location in that place. If the charge and answers of the learned judge were fairly obnoxious to this criticism, there would be manifest error on the record, for location of a warrant is an actual appropriation and setting apart of so much of the land of the Commonwealth to the use of that warrant. It is not a mere mental purpose to appropriate, but an actual appropriation by such acts performed on the ground, or returned into the land office, as shall give the world notice that the designated land has been withdrawn from the common mass of public lands and has become private property.

But I think the plaintiffs in error do not understand the learned judge rightly. He believed the surveys of those two warrants were chamber surveys. Whilst he left the jury free to find a location by marks on the ground, if the evidence would guide them to such a conclusion, it is evident that, for himself, he considered the surveyor had done no work on the ground. If

[McBarron *et al. v.* Gilbert *et al.*]

chamber surveys, they were appropriations by returns made into the land office, instead of by acts on the ground. And when the judge spoke of intention to locate, he meant merely to contrast the chamber survey with the actual survey. We understand him to have instructed that the jury should find that Vanderslice either located these warrants on the land by actual survey, or that he located them by protraction on paper, which, returned into the land office, would indicate the land *intended* to be appropriated. He did not mean that a mere unexecuted intention to appropriate could be treated as a survey. He meant rather that an intention to appropriate might be so treated which manifested itself by a formal return into the land office of a survey, which, though only made on paper, was nevertheless sufficient to give notice to the world, and was one of the recognised modes of locating land warrants;—and herein he is sustained by a cloud of authorities. Whatever doubts may once have existed in regard to the validity of chamber surveys, full effect has been given to them by modern decisions, where time enough has elapsed since their return to raise a legal presumption. This presumption has all the effect of a legal conclusion, and is *presumptio juris et de jure.* That is to say, after one-and-twenty years the law treats all surveys duly returned into the land office as actual surveys, though no compass was set or chain stretched upon the land. Thus the intended appropriation of the surveyor becomes in the highest sense an actual appropriation. We cannot doubt that the learned judge meant to be understood by the jury and was understood as using the word "intended" in the sense above indicated, and that he did not mean that a mere unexecuted purpose of a surveyor, could under any circumstances, become a survey.

To what land the survey, whether made on the ground, or only protracted on paper and returned, was applicable, was a question for the jury on all the evidence, and was properly submitted. It is not our business to review the verdict, and therefore it is not worth our while to discuss the evidence of location.

The other question has regard to the Morris surveys of 1794. Thirty-one warrants, issued 10th January 1794, which were surveyed in the summer of 1794, and patented to Robert Morris in October 1794. It is said that these were actual surveys on the ground, and that they overran the land, upon which the plaintiffs below insisted upon locating the Mertz and Flower warrants. The Mertz and Flower warrants issued in 1784, and were returned the same year. They are only ten years older than the Morris warrants. The point is, then, that when the Morris warrants issued, time enough had not elapsed to raise a conclusive presumption in favour of the Mertz and Flower surveys, and therefore that the jury should have been instructed that mere chamber surveys, returned into the land office only

[McBarron *et al. v.* Gilbert *et al.*]

ten years before, could not prevail against subsequent surveys actually made on the ground.

If this conclusion were granted, the right of the defendants to appropriate it might be pertinently questioned, since they are as much strangers to the Morris title as the plaintiffs. The title of the defendants originated in 1815. Before the warrants issued under which they claim, time enough had elapsed to ripen the presumption which started to grow with the return of the Mertz and Flower surveys, and that presumption is not to be impaired now by the defendants showing that the Morris title, in which they claim no interest whatever, might possibly, at some former day, have successfully resisted the Mertz and Flower surveys. It is enough that after the lapse of more than half a century, no owner of the Morris title has ever asserted it. A warrantee of 1815, against whom the presumption has fully run that the warrants of 1784 were duly surveyed somewhere, cannot set that presumption aside by showing warrants and surveys of 1794, which nobody has ever appeared to assert or claim. But then it will be asked, may not a defendant in ejectment show an out-standing title to defeat the plaintiff? Undoubtedly he may, if the outstanding title be a valid, subsisting title, not one abandoned, derelict, or barred by the Statute of Limitations : Foust *v.* Ross, 1 W. & S. 506 ; Hunter *v.* Cochran, 3 Binn. 108 ; Riland *v.* Eckhart, 11 Harris 215. Now there was not only no evidence here that Robert Morris, or any one under him, has ever claimed the land in dispute, or taken possession of any part of his survey, or returned it for taxation, or paid taxes, or exercised any other acts of ownership ; but it was in evidence that taxes, for more than twenty-one years, had been paid by inconsistent claimants, and evidence was given of two tax sales. It is not quite accurate language to speak of abandonment of a legal title, but after such neglect of a title for sixty-five years, it cannot be regarded as a subsisting title. Whether we call it abandoned, derelict, or barred by the Statute of Limitations, we must, under the circumstances of this case, treat it as null, or else we shall seem to establish a title that nobody claims, and which, according to the evidence before us, nobody could claim successfully. Robert Morris may have discovered that Mertz and Flower had previously appropriated part of the land surveyed to him, and after so long a period of non-claim, it would be more reasonable to presume an intention to give up the land, than it would to permit a stranger to set up his title to defeat the earlier warrants. Certainly, at this time of day, we ought not to affirm the Morris title, to the prejudice of an older office right, before anybody interested in the Morris title has asked us to do so.

Other views might be urged in further answer to the defendants' attempt to set up the Morris title of 1794, but it seems to

[*McBarron et al. v.* Gilbert *et al.*]

me enough has been said to show that that title cannot avail the defendants below.

Having thus failed to find any error in the court's treatment of the only two points of the cause which are up for our review,

The judgment must stand affirmed.